LEONARD & M'CARTEE *against* HUNTINGTON and another.

Where a contract was entered into for the sale of a vessel, the possession of which was taken immediately, but it was agreed that a bill of sale was not to be given until the whole of the purchase money was paid, and in the mean time the register stood in the name of the original owner, who, however, exercised no control over the vessel in any respect, it was held, that he was not liable for repairs

THIS was an action of *assumpsit,* for work done and materials furnished by the plaintiffs, in repairing the brig *Recompense,* against the defendants, as owners of the brig. The cause was tried before Mr. J. *Spencer,* at the *New-York* sittings, in *April,* 1817.

The brig was repaired by the plaintiffs, who were ship-carpenters in the city of *New-York,* during the month of *September,* 1815. She was originally registered at *Middletown,* in the state of *Connecticut,* and the register was in the name of the defendants as owners, from *April,* 1815, to the 28th of *September,* in the same year, including the time in which she was repaired by the plaintiffs. On the 3d of *May,* 1815, a charter party of the brig was executed by the defendants and *Luther Bingham,* by which the former chartered her to *B.* for a voyage from *New-York* to the *West Indies* and back,

made by direction of the master, as agent for, and on the credit of the purchaser, between the time of executing the contract, and the final consummation of it, by the delivery of a bill of sale, but that the persons furnishing repairs must look to the purchaser for payment.

ALBANY,
August, 1818.

LEONARD
v.
HUNTINGTON.

*B.* assuming all the expenses of the voyage, and paying 550 dollars per month, for the use of the brig. The charter party mentioned that *James Pierce* was to sail as master for the voyage, who was appointed by *B.* with the consent and concurrence of the plaintiffs. On the 4th of *May*, one of the defendants, in the name of both, gave a receipt to B. for four notes, payable at different periods, and a small sum in cash, amounting altogether to 6,300 dollars, for which, when paid, or secured to be paid, they were to execute and deliver, or cause to be executed and delivered unto *B.* a bill of sale of the brig, and also to deliver and relinquish in his favour the above-mentioned charter party. The last of the notes having been paid, the contract was consummated, by the delivery of a bill of sale, on the 14th of *October*, 1815, after the vessel's return from her voyage to the *West Indies*, for which she had been manned and fitted out by *B.*, and after her being repaired by the plaintiffs.

*B.*, who was examined as a witness, stated, that he could not say who employed the plaintiffs, but that it was either himself, or the captain, by his direction; that he was sometimes on board of the brig while repairing, but not often, and that the plaintiffs were strangers to him. He also stated, that he did not know whether the plaintiffs had ever sent a bill to him for repairs or not, but that they had once asked him if he would pay their demand, to which he replied, that it was out of his power; that he did not know that the defendants had had any concern with, or exercised any act of ownership over the brig, after the execution of the contract for the sale of her, and that the repairs were commenced a few days after her return from her voyage.

*Pierce*, the master of the brig, stated in his deposition, taken *de bene esse*, that he was employed by *Bingham*; that after the vessel had returned to *New-York* and discharged her cargo, he was directed by *B.* to take her to be repaired, and that she was repaired by *Leonard*, one of the plaintiffs; that he did not himself employ *Leonard*, but he always understood and believed that *B.* had employed him. The deponent was master of the vessel on a subsequent voyage, commenced on the 29th of *September*, 1815; and during the whole time that he was master, acted under the orders and

ALBANY,
August, 1818.

LEONARD
v.
HUNTINGTON.

direction of *B.* as owner, and never received any orders from the defendants, or either of them, relative to the voyage.    All the expenses of the first voyage were paid by *B.*, and the deponent frequently mentioned to *Leonard* that *Bingham* was the owner.    *B.* came frequently to the place where the vessel lay, and in one instance consulted *Leonard* *as to* the expediency of sheathing her, but the deponent could not say whether *Leonard* saw *B.*, when he was at the vessel, more than once or twice.

A verdict was found for the plaintiffs, subject to the opinion of the court, on a case containing the foregoing facts.

*Cowdry,* for the plaintiffs.    The defendants are to be deemed the legal owners of the vessel, so as to be answerable for the repairs.    The registry was in their names.    It is true, there was a charter party, but that ended in *August,* and the repairs were made in *September ;* and until *October,* when the bill of sale was executed by the defendants to *Bingham,* the defendants must, in judgment of law, be considered the owner.    (*Abbott on Ships,* part 1. ch. 2. s. 29, 30.    *Westerdell* v. *Dale,* 7 *Term Rep.* 306.    *Rich* v. *Coe, Cowp.* 336.)

The charter party described the defendants as owners, and they were to continue such, until the happening of certain events.    Suppose the contract with *B.* as to the sale had never been fulfilled on his part, would not the defendants have remained owners of the vessel, and the repairs have accrued to their benefit ?    In the case of *Young* v. *Brander and another,* (8 *East,* 10.) which may be cited by the defendants' counsel, the defendants had executed the bill of sale, and had done every thing in their power to devest themselves of the property, and the purchaser took possession, but neglected to deliver the certificate of registry to the proper officer, until near a month after the sale.    And in *Wendover and another* v. *Hogeboom,* (7 *Johns. Rep.* 308.) which may, also, be cited on the other side, *Vosburgh,* the purchaser, took immediate possession of the vessel, and represented himself to the plaintiffs as the owner, and obtained an extension of the term of payment for the repairs.

*Griffin,* contra. The true and actual owner of a vessel is the person responsible for repairs, when the repairs are ordered by him, or by some person authorized by him as his agent. He is not answerable for repairs ordered by a *stranger,* or to any person voluntarily doing them, without any request or authority from him. (8 *East,* 10.) The register of a ship is necessary only to show her *national* character, and is not evidence that the person whose name is inserted in it is the owner. (*Sharp* v. *The United Insurance Company,* 14 *Johns. Rep.* 201. *Fraser* v. *Hopkins,* 2 *Taunt. Rep.* 5.) In *James* v. *Bixby,* (11 *Mass. Rep.* 36.) the grounds on which owners of vessels are liable for repairs are very clearly and distinctly stated, none of which exist in this case. The defendants gave no directions as to the repairs ; they knew nothing of them ; they were not done on their credit ; nor have they derived any benefit from them ; nor were the repairs ordered by any person having any agency or authority from the defendants. *Bingham* was the charterer, and by the contract was to have the appointment of the master, who, as well as the crew, were to be provided and paid by him. (7 *Johns. Rep.* 308.) Even if *B.* was not to be deemed owner, by virtue of the contract of sale, yet, being the charterer, and having the entire control and direction of the vessel, the defendants cannot be liable for repairs. (*Fraser* v. *Marsh,* 13 *East,* 238.) *B.* was the owner, *pro hac vice.*

Again ; a *mortgagee* of a ship out of possession is not liable for repairs of the ship, or for necessaries furnished for her. (*M'Intyre* v. *Scott,* 8 *Johns. Rep.* 159.) The defendants are not in a worse situation, in this respect, than a mortgagee out of possession. The agreement may be considered as a virtual, though not a formal mortgage.

*T. A. Emmet,* in reply. Owners of vessels are liable for repairs, unless a credit has been given to some other person ; or they can show some act or contract which prevents their liability. The *register* is *prima facie* evidence of ownership. The defendants were, in fact, the real and legal owners. The charter party speaks of *P.* as the master ; he was appointed by the joint consent of the defendants and

*Bingham*, and was their àgent.   B. could not remove him without the consent of the defendants.

THOMPSON, Ch. J. delivered the opinion of the court. The demand on which this action is founded is for repairs done to the brig *Recompense.* The ground upon which it is sought to make the defendants responsible, is that they were *owners* of the brig.   But this ground is not, under the circumstances of this case, tenable.   The brig, on the 3d of *May*, 1815, had been chartered by *Bingham* for a voyage to the *West Indies.*   The next day, she was purchased by *Bingham*, but, by the contract, a bill of sale was not to be given until the stipulated price was paid, or secured to be paid : possession was taken of the brig under this charter and contract.   Having performed the voyage stipulated in the charter, the brig was sent by *Bingham* to the plaintiffs to be repaired, they being previously informed that she was owned by *Bingham*, and he occasionally attending while the repairs were going on, and giving directions relating to them.   Soon after the repairs were made, the last note given by *Bingham* fell due.  The bill of sale was thereupon given, according to the contract.

As between the parties to the contract, there can be no doubt this would relate back to the time when the contract was entered into.   Third persons are not, however, to be prejudiced by such relation ; and had the defendants remained in possession of the brig, or had the repairs upon her been made upon their credit, in any manner, the plaintiffs ought not to be affected by such relation ; but that was not the case.   They were not, in point of fact, employed by the defendants to make the repairs ; nor could they be considered as looking, in any way, to unknown owners.   For they were expressly informed that *Bingham* was the owner, and so far, therefore, as any claim upon the owner was relied on, he was the person they looked to for payment.

The register standing in the name of the defendant, did not, in any manner, determine the ownership of the brig, according to the decision of the court in *Sharp* v. *The United Insurance Company*, (14 *Johns. Rep.* 201.)   The repairs were not made for the defendants, or for their bene-

fit, by authority or direction of the master. He was not their agent, or acting under their authority or direction. He was, to be sure, the master agreed upon by the charter party; but that was at an end some time before the repairs were made ; *Pierce* was the exclusive agent of *Bingham*, the purchaser, and held the vessel for him, and he claimed under the contract, and not under the charter party. So far as respected the repairs, the defendants were mere strangers, (8 *East*, 10.) and could derive no benefit from them. They had not a right to the possession or use of the vessel. She was held by *Bingham* under his contract. In the case of *Garman* v. *Bennet*, (*Stra.* 816.) it was held, that, *prima facie*, the repairer of a vessel has his election to sue the master who employs him, or the owners ; but if he undertakes it on a special promise from either, the other is discharged. There was not, to be sure, in the present case, any special promise by any person to pay for the repairs. But there was something equivalent to it, an actual employment by *Bingham*, as *owner*, through his agent, the master ; and there can be no doubt but *Bingham* would be liable for such repairs. When a master contracts for the use of the vessel, the credit is given to him in re-spect of his contract ; and it is given to the owners, be-cause the contract is on their account. (1 *Term Rep.* 109.) But when the contract is made on account of any particular person, as *owner*, it is on his credit, and not on the credit of any unknown owner, that the expenditure is made. This case is very analogous to that of *Wendover* and *Hinton* v. *Hogeboom* and *others*, (7 *Johns. Rep.* 308.) There, as in this case, the consideration money was to be paid by in-stalments, and a formal bill of sale was not to be executed and delivered until the payments were completed. No posses-sion of the vessel was delivered ; and it was held, that a regular bill of sale was not essential to transfer the property in a vessel, and that the former owners, under such a sale, were not responsible for articles furnished the vessel. They had ceased to be owners, so far as to exempt them from responsibility for supplies, especially as the credit was not given to them These are principles which apply directly to the case before us, and go to exonerate the de-

ALBANY,  fendants from the present demand.    They are accordingly
August, 1818.  entitled to judgment.

QUIMBY
v.
HART.                                          Judgment for the defendants.