## SAXTON vs. READ.

The master of a vessel has a general authority to bind the owners for needful repairs and supplies for the vessel. (a)

By agreement one Jackson was to go in a schooner as captain, and devote all his time for the benefit of the owners. He was to hire and pay the crew, except the wages of the cook which were to be divided, as also were the port charges, and he was to furnish provisions, &c.; for all which he was to be "entitled to one half of the net profits of sailing said schooner, the other half to go to the owners"; the agreement to continue as long as both parties might agree. It did not appear that plaintiff was aware of this agreement, and the schooner was enrolled at the custom-house with defendant's name as owner, and that of Jackson as captain. *Held*, that the agreement did not make Jackson owner *pro hac vice* of the schooner, and that the general owners were liable to plaintiff for stores supplied the schooner on Jackson's order. (b)

*Semble.* The general authority of the master to procure, on the credit of the owners, all needful supplies for his ship does not, under ordinary circumstances, cease when the ship is in the port where the owners reside. (c)

(a) See *Turner* v. *Barrows*, 8 Wend., 144, as to the duties and authority of the master of a vessel.

(b) See *Flanders* v. *Merrit*, 3 Barb., 201; *Hesketh* v. *Stevens*, 7 id., 488; *Dunham* v. *Jarvis*, 8 id., 88; *Manning* v. *Dunn*, 14 id., 583; *Lander* v. *Clark*, 1

ERROR to the New York common pleas. Saxton sued Read for goods sold, &c., to which the general issue was pleaded. On the trial, it appeared that in May and August, 1841, one Captain Jackson purchased of the plaintiff some stores for the schooner Agawane; Jackson was captain of the schooner, and the claim was against the defendant as one of the general owners. The stores were delivered, bills were to be sent to the defendant's office for payment, and were so sent in November, 1841, when the defendant said he was sorry the first bill had not been presented when due, as he had funds at that time to pay it, and it would have been paid. The sales were at four months credit, both bills being due when presented, averaging the credit which was usual. The defendant refused to pay the bills. The plaintiff had never before dealt with Capt. Jackson, or with the defendant, and it does not appear that he knew anything of the arrangement between the defendant and Jackson. The defendant was informed of Jackson's purchase at the period when made. It was admitted the defendant was a general owner of the schooner, when these stores were purchased; she was enrolled at the custom-house as owned by the defendant, and Captain Jackson was named therein as master.

Jackson testified that he was captain of the schooner from 20th May, 1841, to February, 1842, that he bought the stores of the plaintiff for the schooner, that he was sailing the schooner on shares with the owners under an agreement between them, by which the witness agreed to go in said schooner as captain, and to devote all his time for the benefit of the owners; the witness was also to hire and pay the crew, and all the help required in loading and discharging the vessel, but the cook's wages and port charges were to

Hall, 355; *Ring* v. *Franklin*, 2 id., 1; *Birbeck* v. *Tucker*, ib., 121; *Higgins* v. *Packhard*, ib., 226; *Ward* v. *Whitney*, 3 Sandf., S. C. R., 399; *Holmes* v. *Palvensted*, 5 id., 97.

(c) The master of a vessel, as general agent of the owners, has authority, in a home port, to bind them by his contract for necessary repairs to the vessel, unless his power has been in some way superseded and notice thereof is brought home to the creditor. *Provost* v. *Patchin*, £ Selden's Notes of Cases in the Court of Appeals, p. 10.

be divided; the witness was to furnish provisions for the schooner, in consideration of which he was to have one half of the net profits of sailing said schooner and the owners the other half, which was to be received by the defendant for said owners; the agreement to continue so long as both parties might agree, and no longer. This agreement was ended in February, 1842; the defendant furnished and ordered repairs for the schooner, and the master ordered the stores for her, he employed and discharged the crew, and had control of the schooner while the agreement continued. The defendant personally never had any of the stores purchased for the schooner. The master collected the bills for freight, with the exception of one or two cargoes, used part to pay his expenses and paid what he could to the defendant, but when he quit in February, 1842, he could not pay the defendant all which was due the owners. The defendant collected some pay for freight in October, 1841, and he freighted some in the schooner himself. When the bill was made with the plaintiff in August, the master told him to send to defendant who would have funds; the master told the defendant he was purchasing of plaintiff. On 18th and 19th May, 1841, a notice was published in the *Courier and Enquirer* (a newspaper), which stated that all persons were cautioned against trusting any of the crew or other persons on account of the schooner Agawane, as no debt would be paid, except such as were made or authorized by the owners. Also another notice was published in same paper on 30th and 31st August, and 2d September, 1841, forbidding all persons trusting any one on account of said schooner. No name was put to either notice. There was evidence to show that the plaintiff then took said newspaper. The judge charged the jury, that the owner of a vessel is liable to pay for supplies furnished to the captain for the use of the vessel unless the credit is exclusively given to the latter, and that in this case there was not sufficient evidence that the credit had been given exclusively to the captain. That the captain was not owner *pro hac vice*, and that the defendant was not freed from liability by the notices in proof. To which charge the counsel for the defendants excepted. **Verdict**

for plaintiff. A bill of exceptions was signed and judgment being rendered for the plaintiff, this writ of error was brought by the defendant.

*C. S. Roe,* for plaintiff in error. I. The plaintiff in error, (defendant below) is sought to be charged upon an implied assumpsit for goods sold and delivered to a third person. To sustain this action it must be shown either, that the goods came to the use of the plaintiff in error, or were sold upon his credit, to a person having authority to pledge that credit. Upon neither ground is the action sustained. II. That the owner of a vessel is liable for necessary stores furnished, by order of the master, upon the credit of the vessel and owners, is conceded as a general principle. But it is only the owner "pro hac vice", the owner for the purposes of the particular voyage, or employment of the vessel for which the stores are furnished—who is so liable—and such ownership and liability is determined by ascertaining who then had the *possession, control and management* of the vessel, who was bound to supply the stores and to whose use therefore have they come. Upon these principles all the cases have been decided. 3 Kent's Com. (3d ed.), 133 to 138; Abbot on Shipping, 19 (note), 22, 23 and 100; *Wendover* v. *Hogeboom,* 7 Johns., 308; *Leonard* v. *Huntington,* 15 id., 298; *Thorn* v. *Hicks,* 7 Cowen, 697; *McIntyre* v. *Scott,* 8 Johns., 159; *Champlin* v. *Butler,* 18 id., 169; *Ring* v. *Franklin,* 2 Hall's R., 1; *Fisher* v. *Willing,* 8· Seargt. & R., 118; *McIntyre* v. *Brown,* 1 Johns., 229.) III. Under the agreement made by him with the plaintiff in error, Jackson (the master), at the time when the stores in question were furnished, had the control and management of the vessel. He was bound to supply the stores and they came to his use; he therefore was owner "pro hac vice," and consequently he is liable and the plaintiff in error is not. IV. The master of a vessel sailing her upon shares under an agreement by by which he is to furnish stores, &c., is, according to express decisions owner "pro hac vice" and consequently, under such circumstances, he and not the general owner is liable for stores furnished. (*Hallett* v. *The Col. Ins. Co.,* 8

Johns., 272; *Reynolds* v. *Lappan*, 15 Mass. 370; *Laggard* v. *Laing*, 16 id., 336.) V. There is no hardship in the rule contended for, either as a general rule or in its application to this particular case. It is the customary principle on which all cases of implied assumpsit are determined. VI. The notices published by the plaintiff in error, as proved at the trial in the court below, also protect him against liability to pay for the stores in question.

*Harris Wilson,* for defendant in error. I. The masters and owners both are liable for necessary stores furnished on the request of the master. The owners are liable for the master's acts, 1st. Because they choose him. 2d. Because of the benefit arising from the ship which is the equitable motive. 3d. Because they have the direction of the persons who navigate. II. The general owner is liable in all cases for necessary stores except where the credit is given to another, or the stores are furnished to a charterer or special owner with knowledge thereof on the part of the person furnishing the articles. III. The character of owner pro hac vice established in cases involving the question of barratry and questions of freight and the decisions upon that point in cases in which those questions have arisen do not affect the principle of liability of the general owner for necessaries furnished to the ship. IV. The charterer of a ship is only to be considered owner pro hac vice for any purpose in those cases where the general owner has surrendered to him the entire and exclusive possession, management and control of the ship. (*a*) V. In this case the owner did not part with the possession of the schooner; the agreement does not give to the master the exclusive control of the vessel; it gives him no control of her except what was incident to him as master; the agreement is only a covenant between master and owners as to remuneration for his services; the master is not under it an owner pro hac vice. VI. The notices published were not brought home to the defendant in error and he can not be affected by them; there is no analogy between the

(*a*) See *Clarkson* v. *Edes*, 4 Cow., 470, as to what circumstances will make the charterer owner.

owner of a vessel and a retiring partner; the rule of law therefore in relation to notice of dissolution of copartnership can have no application to this case.  VII. The plaintiff in error was liable as owner and he could not relieve himself from his responsibility as owner by such notices.  VIII. The agreement in question constituted the owner and master copartners, and as such the owner was liable and could not relieve himself by notice during the continuance of such agreement.

*By the Court*, BEARDSLEY, J.  The general authority of a master to procure all needful repairs and supplies for his ship on the credit of the owners, was not denied on the argument and is undoubted.  He is their agent in all matters pertaining to the usual employment of the ship, and they are bound to perform his contracts in the business entrusted to his care and management. (Abbot on Shipping, 4th Amer. ed., pp. 17 to 22 and notes; pp. 90 to 101 and notes; Holt's Law of Shipping, 217 to 228.)

It was objected that this general authority of the master, although in active existence when the ship is abroad, is quiescent or suspended when she is in the port where the owners reside.  This question was not decided or made in the court below, and therefore can not be raised here.  But if properly made, I apprehend it would not, under ordinary circumstances, be found to present any serious obstacle to a recovery. (Abbott, 101, 108 ; Holt, 225 ; *Robinson* v. *Lyall,* 7 Price, 592.)

Where the general owners of a ship cease to navigate her, and transfer the possession and control to another person, he is regarded as owner *pro hac vice*, and responsible accordingly.  He takes the place of the general owners; appoints the master; directs the voyage, and is entitled to the earnings of the ship; he, therefore, and not the general owners, is liable for the expenses and hazards of the employment.

The authorities do not harmonize in determining what shall, in all cases, effect a substitution of the temporary for the permanent owner. (3 Kent's Com., 5th ed., 133 to 138 ; Abbott, 17 to 22 and notes; Holt, 194 to 199, 461, 474 ; *Rice*

v. *Coe*, Cowp., 636 ; *Hallet* v. *The Col. Ins. Co.*, 8 Johns., 272.)
But it is unnecessary in the present case to enter into that
general question.

All the authorities on the subject will be found to agree
in the position, that when the general owners navigate the
ship for their own profit, appoint the master, and continue
or dismiss him as they think proper, so that the relation of
principals and agents exists between them, the owners are
liable on the contracts of the master, and for his acts, in and
about the necessary supply, and in the management of the
ship. The business is carried on for their benefit and ad-
vantage, and it is but reasonable they should bear the ex-
penses, and incur the risks of employers.

It was conceded on the trial that the defendant was one
of the general owners of the schooner for which the supplies
were furnished, but objected that Jackson was then in posses-
sion as temporary owner, and therefore the general owners
were not liable. The agreement between the defendant and
Jackson preceded the purchase of the stores, and continued
some time after the last bill of goods had been delivered, and
it must determine the relation in which these parties stood
towards each other and in regard to the schooner during
that period.

By the agreement Jackson was to go in the schooner *as
captain*, and devote all his time for the benefit of the owners.
He was to hire and pay the crew, except the wages of the
cook which were to be divided, as also were the port charges,
and he was to furnish provisions, &c. ; for all which he was
to be " entitled to one half of the net profits of sailing said
schooner, the other half to go to the owners ;" the arrange-
ment to continue as long as both parties should agree.

This was a mere contract, not a conveyance, between the
defendant and Jackson. It did not deprive the owners of
their power over the schooner, for the time being, or their
right to control and direct its use. It was an employment
of Jackson as captain or master, and not a transfer of the
schooner to him as owner *pro hac vice*. General owners can
not be deprived of the control and management of their
property by equivocal words or engagements, where such

are used or entered into. But the agreement, in this respect, is free from all obscurity : it recognizes in explicit terms. the employment of Jackson *as captain,* and the rights of the defendant and others *as owners.*

There is nothing in this agreement to place Jackson beyond the control and direction of the owners. He was their agent and subject to their orders.. It imposed no service on him which is not usually performed by the master of a trading vessel for his employers. The whole effect of the arrangement was to provide a mode by which Jackson's compensation, as master, was to be determined. (*Wilkinson* v. *Frazier,* 4 Esp., 182 ; *Meyer* v. *Sharpe,* 5 Taunt., 74.; *Dey* v. *Bosnell,* 1 Camp., 329, and note.) As to third persons, Jackson was but master, and the defendant and others were owners of the schooner.

It is not shown that the plaintiff had any knowledge of the arrangement between Jackson and the defendant, and it is not probable he had any. As to him the arrangement was secret. At the custom-house the defendant's name appeared as owner and that of Jackson as master. Upon every principle applicable to such a case, it seems to me, the plaintiff was entitled to recover. (*Rice* v. *Coe,* supra; *Saville* v. *Campion,* 2 B. & A., 503 ; *Fletcher* v. *Bradick,* 5 B. & P., 182; *Leonard* v. *Huntington,* 15 Johns., 298.; *Christie* v. *Lewis,* 2 B. & P., 410 ; *Philips* v. *Ledley,* 1 Wash. C. C. R., 226 ; *Tucker* v. *Buffington,* 15 Mass., 477 ; *Emery* v. *Hersey,* 4 Greenleaf, 407.)

This case is distinguishable from those in 15 and 16 Mass. R. to which we were refered.

In *Reynolds* v. *Toppan* (15 Mass., 370), the owner let and chartered his schooner to one, Marshall for the season. Marshall was to victual and man the vessel, to purchase cargoes at his own expense, and at the end of each trip pay to the agent of the owner two-fifths of the net profits.

Putnam, J., in pronouncing the opinion of the court said, " It is not enough to prove that the vessel was owned by the defendant. It must appear also that she was in his employment. It must likewise be proved that the master was appointed by the owner, and acted within the scope of his

Saxton v. Read.

authority." And he added that by the agreement Marshall "became the owner *pro hac vice.* She was in the employ-ment of Marshall, and he directed when and where she should go. He had a right to act as master himself or ap-point any other master." "The defendant for a season had parted with his right to govern and manage the vessel, and Marshall can not be considered as the defendant's agent or servant."

In principle the case in 16 Mass., 336, (*Taggard* v. *Loring*) is the same. Parker, C. J., said, "Jennings had acquired a right to the use of the vessel from November, 1815, to May, 1816." "The whole management of the vessel was commit-ted to Jennings; and within the time stipulated, he had a lawful right to exclude the general owners from the pre-mises." "There was no relation of master and owners."

These extracts show that the cases refered to are wholly inapplicable to the one under consideration, and can not control its decision. The cases of *Thompson* v. *Snow* (4 Greenl., 264) and *Minsor* v. *Cutts* (7 Greenl., 261) are, in principle, like these Massachusetts cases.

The newspaper notices may be laid out of view. It does not appear by whose order they were published. They had no signature, and were vague and equivocal in their terms and import. If the plaintiff saw them in print, I think they could not affect his right to recover for these sup-plies.

The judgment should be affirmed.

Judgment affirmed.