The law of Illinois is to govern as to the validity and effect of the defendant's mortgage. The contract was made in that State, and if valid there, it is to be *Page 98 
considered equally valid, and to be enforced here; and on the contrary, if it be void there, it is to be considered void in this State. The defendants have come into the State to defeat an interest of the plaintiff in the vessel acquired here, by a right claimed to have been acquired by them under the laws of Illinois; and as the same policy, relative to mortgages on personal property, exists in New York that obtains in Illinois, there is no objection to treating the contract in New York in the same manner that it would be treated in Illinois. Indeed, it is conceded by the defendant's counsel that the law of Illinois, being the lex loci contractus, governs in regard to the interpretation of the mortgage; and if the Illinois statute in respect to chattel mortgages was in force, as regarded the schooner, when the mortgage was executed, the defendants must fail, for they have not complied with its provisions.
The statute of Illinois declares that "no mortgage on personal property shall be valid against the rights and interests of any third person or persons, unless possession of such personal property shall be delivered to and remain with the mortgagee, or the said mortgage be acknowledged and recorded," as provided in the statute. In this case, there was neither a delivery of the vessel to the mortgagee, nor an acknowledgment or recording of the mortgage; and it was therefore void as to the rights and interests of third persons. If this statute was operative where the property mortgaged was an enrolled vessel of the United States, licensed and engaged in the coasting trade, the mortgage, as against the plaintiff, would be invalid. The obvious purpose of the statute (like a kindred one of our own), was to prevent fraudulent conveyances. It is urged, however, that it is in conflict with the act of Congress of July 29, 1850, entitled "an act to provide for the recording of the conveyances of vessels, and for other purposes;" and as the latter act was passed in pursuance of a clear authority under the United States Constitution, it is the supreme law of the land, and any law of a State in conflict with it is inoperative and void. There is no doubt of the soundness of the general principle that if Congress have *Page 99 
the constitutional and exclusive power to regulate a particular subject, and they have exercised the power in a particular manner, and in a certain form, State legislatures have no right to interfere and prescribe additional regulations, or what they may deem auxiliary provisions for the same purpose. If the power be lodged exclusively in Congress, and it has been exercised, the proposition that the States cannot interfere, even by way of additional legislation, to further the same purposes, requires no argument. The power of the legislature, and the purpose and intention of a particular statute, are, however, questions for the courts; and it is the duty of judicial tribunals to so construe statutes as to give them force and effect, and, if possible, to avoid conflict. The question under consideration is of importance; for if the Illinois statute be in conflict with the act of 1850, and must yield in reference to mortgaged vessels engaged in foreign commerce or among the several States, the same fate awaits our own statute of frauds. Prior to the act of 1850, no doubt was ever expressed as to the applicability of our statute to a vessel of the United States, and I am not aware that any case has arisen since the passage of the act in which it has been questioned. (White v. Cole, 24 Wend., 116.)
The defendant's mortgage was recorded in the office of the collector of customs at Chicago, where the schooner was enrolled, and not elsewhere. The first section of the act of Congress declares "that no bill of sale, mortgage, c., of any vessel or part of any vessel of the United States, shall be valid against any person other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof, unless such bill of sale, mortgage, c., be recorded in the office of the collector of the customs where such vessel is registered or enrolled. (1 U.S. Stat. at Large, 440.) Now it is contended by the defendant's counsel that the intention and effect of the act is to determine the rights of third persons in regard to mortgaged vessels of the United States, or what shall be requisite to the validity of such a mortgage as against third persons; and as Congress had power to pass a law having the *Page 100 
effect claimed, it was the law of Illinois — the lex locicontractus — which was complied with by the defendants. The construction given by the defendants to the section, in effect, is that if the mortgage be recorded with the collector as prescribed, it shall not be necessary to comply with any of the statutes of the States, and if there be not a compliance with the statute of the State of Illinois, as in this instance, still the mortgage shall be valid against everybody. It is answered that the act was intended to prevent fraudulent conveyances of vessels of a national character, and to regulate the rights of owners as among themselves, or transfers as between citizens and the rights of third parties. I am not inclined to consider this the purpose of Congress in the passage of the act, or that such is its effect. This was certainly not the purpose and effect of the registry and enrollment acts of 1792 and 1793, to which it is evidently additional; for those acts were passed to apply between the government and the owners of a certain class of vessels. (Larned v. Huntington, 15 John., 298; Sharp v. UnitedStates Insurance Co., 14 id., 201.) The act of 1850 was evidently not passed to prevent fraudulent conveyances; for the moment a vessel ceases to be enrolled or registered the act ceases to apply, showing that the act was intended to regulate the vessel's action in commerce and navigation. It has not the features of an act to prevent fraudulent conveyances. It does not apply to any vessels other than those which are enrolled or registered, and the enrollments and bills of sale of vessels under it are required to be so drawn as to specify "the part of the vessel owned by the person selling, and the part conveyed to each person purchasing." The act also requires the owner to swear as to his ownership (§ 5), and no proof of the due execution of the instrument transferring title is made a prerequisite to the recording of it, nor is the record or a certified copy of it made evidence of any fact, unless, probably, the fact of record simply.
I am of the opinion that the terms of the act of 1850 do not require us to adopt the defendant's construction of it; but that its requirements are only additional to those of the statutes *Page 101 
of the States. It seems to me it was passed to apply between the government and the owners of a certain class of vessels. That its purpose was to secure a complete record in the office of the collector of customs of the title to enrolled and registered vessels, and its object was not to regulate and control the transfer of property in vessels generally, but to provide a custom house regulation which would better protect the government against violations of its revenue system, and enable its officers to enforce the rules relating to the national commerce. The recording of bills of sales, mortgages, c., of vessels registered or enrolled in the office of the collector of customs: the specifying the name of the vendor and vendee, their respective interests; the verification of these facts by the owner, are mere regulations to prevent abuse, and to enable the officers of the general government to more successfully detect and guard against infractions of the laws regulating commerce with foreign nations and among the several States. By adopting this construction, both the act of Congress and the statutes of the several States will have force and effect, and conflict be avoided; whereas, if we regard the enactment of Congress as a statute of frauds, and the exercise of a power to regulate the ownership, transfer and evidence of title of that species of personal property in an enrolled or registered vessel, there will be direct conflict, and one or the other must yield. It is, at least, doubtful whether Congress has any power to pass any law having the effect claimed for this act by the defendants; but regarding it as a mere commercial regulation, intending to apply only between the government and a certain class of vessels, the power is not doubtful. We are not, if it can be avoided, to adopt such a construction of a law as involves a doubtful exercise of legislative power in its passage.
I think, therefore, that the act of Congress did not annul the Illinois statute, but that they may both stand and be harmonized, and force and effect given to both. The recording of the defendant's mortgage, under and in compliance with the act of Congress, did not give such notice to the plaintiff as *Page 102 
dispensed with a compliance with the statute of the State of Illinois, and such mortgage was consequently void as against the plaintiff.
The judgment of the Superior Court of Buffalo should be affirmed.
All the judges concurring,
Judgment affirmed.