Gould, J.
While there can be no doubt that the United States Government has the power to pass all laws for regulating the transfer of the title of enrolled vessels, as part of its supervisory power over the nationality of such vessels, and while that government may properly require the recording of a mortgage of a vessel, because it is a transfer of the title, there seems no reason why, in regard to vessels any more than any other chattels, the rules of evidence in the State tribunals should be regulated by acts of Congress. As to a purchaser of a vessel, it may be that, as he necessarily is referred to the-certificate of enrollment, as part of the seller’s title, he is thus put in the way of finding out, at the office where such enrollment was made, whether there be any mortgage of the vessel there recorded. And in this way he (though in a different State from the office) may be held bound by such record, as one of which he either had, or was bound to have, actual notice. This would, however, be but an incidental effect of the statute, and if that effect, and no other, were the object of *88 the law, that object could hardly be deemed within the jurisdiction of Congress. It certainly need not be called so plainly within that jurisdiction as to make that exclusive of State jurisdiction. And such incidental effect should not be allowed to interfere with the law of a State, passed upon the same subject, for the very purpose of regulating the action of its own citizens and courts. And in the courts of any State, the citizens of another State stand upon the same footing, both as to person and property, as do its own citizens. This must be the rule for chattels, as well as for land. And parties who place personal property within the jurisdiction of any State, are as much bound by its laws in regard to that propérty, and any lien on, or right or title to it, as if it were land, and incapable of being moved into any other jurisdiction.
It is upon this principle that, “ whenever personal property is taken by arrest, attachment or execution, within a State, the title so acquired under the laws of a State is valid in every other State.” (Story Conflict of Laws, § 550; 3 T. R., 733; 9 Mass. Rep., 468; 19 N. Y., 224.) And if the plaintiff in this case, within this principle, under the laws of Mew York, by the attachment against Jacobs, acquired a valid lien on this vessel, the judgment below is to be affirmed.
By the laws of Illinois (as by the law of this State on the same subject), the mortgage of this vessel was valid between Jacobs and Aldrich; and if the latter, following the vessel to Buffalo, had then sought to enforce his title, there can be no doubt that our courts would have sustained him in so doing. But suppose (to avoid, for the present, all question as to the U. S. statute), the mortgaged property a horse, and that Jacobs had brought it to Buffalo and sold it to a Iona fide purchaser, would our courts sustain Aldrich’s title as against this purchaser ? To do so, they would be obliged to admit evidence of good faith (in the transaction between Jacobs and Aldrich), without having laid for such admission the foundation of notice in law, which, between our own citizens, our statute provides for in the filing and recording of the mortgage; and further, they would be obliged to call good here, an Illinois *89 contract which is not good there. How far different would this be from holding a note, made and to be paid in Massachusetts, and reserving seven per cent interest, good here, though bad there ? For the validity of a contract, the lex bci contractus governs: the lex fori applies only to the enforcement of the remedy. Nor is it an answer to say that the contract is valid in Illinois for some purposes, that is, as between the parties to it; for, as to the parties litigant in our court (“ as against the rights and interests of any third parties”), the Hlinois statute says expressly it “ shall not le valid.” It is absolutely invalid as to any third person who takes the objection; and as to all such, it vested no title in Aldrich.
Applying this rulé to the case before us, leaves the mortgage in the same state of invalidity, as regards the rights of a mere creditor (as this plaintiff is), as if a purchaser were the contesting party; and though this is done in favor of a party who, being really entitled to take only what his debtor has in the property, has no equity as against the mortgagee. Still the law, for the purpose of preventing the fraudulent covering up of property, has seen fit so to extend the rule; and so the law is to be administered. The law is, in substance, that the mortgage having (as to third persons), no power to divest Jacobs of his title, he remains, as to them, with the title in him; and that title is reached by the attachment.
It is not necessary to pass upon the point, whether, in case of a chattel mortgage valid in Illinois by being there recorded, our courts would be bound to enforce, against a lona fide purchaser here, a title of which he not only, had no actual notice, but was really in no position to be charged with constructive notice. We simply hold that a mortgage of personal property is no better in this State than in the State in which it was executed, and of which the parties to it are citizens. The judgment of the Superior Court of Buffalo should be affirmed.
Wright, J.
The law of Hlinois is to govern as to the validity and effect of the defendant’s mortgage. The contract was made in that State, and if valid there, it is to be *90 considered equally valid, and to be enforced here; and on the contrary, if it be void there, it is to be considered void in this State. The defendants have come into the State to defeat an interest of the plaintiff in the vessel acquired here, by a right claimed to have, been acquired by them under the laws of Illinois; and as the same policy, relative to mortgages on personal property, exists in Hew York that obtains in Illinois, there is no objection to treating the contract in Hew York in the sanie manner that it would be treated in Illinois. Indeed, it is conceded by the defendant’s counsel that the law of lili-. nois, being the lex loci contractus, governs in regard to the interpretation of the mortgage; and if the Illinois statute in respect to chattel 'mortgages was in force, as regarded the’ schooner, when the. mortgage was executed, the defendants must fail, for they have not complied with its provisions.
The statute of Illinois declares that “ no mortgage on personal property shall be valid against the rights and interests of any third person or persons, unless possession of such per ■ sonal property shall be delivered to and remain with the mortgagee, or the said mortgage be acknowledged and recorded,” as provided in the statute. In this case, there was neither a delivery of the vessel to' the mortgagee, nor an acknowledgment or recording of the mortgage; and it was therefore void as to the rights and interests of third persons. If this statute was operative where the property mortgaged was an enrolled vessel of the United States, licensed and engaged in the coasting trade, the mortgage, as against the plaintiff, would be invalid. The obvious purpose of the statute (like a kindred one of our own), was to prevent fraudulent conveyances. It is urged, however, that it is in conflict with the act of Congress of July 29, 1850, entitled “an act to provide for the recording of the conveyances of vessels, and for other purposesand as the latter act was passed in pursuance of a clear authority under the United States Constitution, it is the supreme law of the land, and any law of a State in conflict with it is inoperative and void. There is no doubt of the soundness of the general principle that if Congress have *91 the constitutional and exclusive power to regulate a particular subject, and they have exercised the power in a particular -manner, and in a certain form, State legislatures have no right to interfere and prescribe additional regulations, or what they may deem auxiliary provisions for the same purpose. If the power be lodged exclusively in Congress, and it has been exercised, the proposition that the States cannot interfere, even by way of additional legislation, to further the same purposes, requires no argument. The power of the legislature, and the purpose and intention of a particular statute, are, however, questions for the courts; and it is the duty of judicial tribunals to so construe statutes as to give them force and effect, and, if possible, to avoid conflict.- The question under consideration is of importance; for if the Illinois statute be in conflict with the act of 1850, and must yield in reference to mortgaged vessels engaged in foreign commerce or among the several States, the same fate awaits our own statute of frauds. Prior to the act of 1850, no doubt was ever expressed as to the applicability of our statute to a vessel of the United States, and I am not aware that any case has arisen since the passage of the act in which it has been questioned. (White v. Cole, 24 Wend., 116.)
The defendant’s mortgage was recorded in the office of the collector of customs at Chicago, where the schooner was enrolled, and not elsewhere. The first section of the act of Congress declares “ that no bill of sale, mortgage, &c., of any vessel or part of any vessel of the United States, shall be valid against any person other .than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof, unless such bill of sale, mortgage, &c., be recorded in the office of the collector of the customs where such vessel is registered or enrolled. (1 U. S. Stat. at Large, 440.) How it is contended by the defendant’s counsel that the intention and effect of the act is to determine the rights of third persons in regard to mortgaged vessels of the United States, or what shall be requisite to the validity of such a mortgage as against third persons; and as Congress had power to pass a law having the *92 effect claimed, it was the law of Illinois — the lex loci contractus— which -was complied with by the defendants. The construction given by the defendants to the section, in effect, is that if the mortgage be recorded with the collector as prescribed, it shall not be necessary to comply with any of the statutes of the States, and if there be not a compliance with the statute of the State of Illinois, as in this instance, still the mortgage shall be valid against everybody. It is answered that the act was intended to prevent fraudulent conveyances of vessels of a national character, and to regulate the rights of owners as among themselves, or transfers as between citizens and the rights of third parties. I am not inclined to consider this the purpose of Congress in the passage of the act, or that such is its effect. This was certainly not the purpose and effect of the registry and enrollment acts of 1792 and 1793, to which it is evidently additional; for those acts were passed to apply between the government and the. owners of a certain class of vessels. (Larned v. Huntington, 15 John., 298; Sharp v. United States Insurance Co., 14 id., 201.) The act of 1850 was evidently not passed to prevent fraudulent conveyances ; for the moment a vessel ceases to be enrolled or registered the act ceases to apply, showing that the act was intended to regulate the vessel’s action in commerce and navigation. It has not the features of an act to prevent fraudulent conveyances. It does not apply to any vessels other than those which are enrolled or registered, and the enrollments and bills of sale of vessels under it are required to be so drawn as to specify “ the part of the vessel owned by the person selling, and the part conveyed to each person purchasing.” The act also requires the owner to swear as to his ownership (§5), and no proof of the due execution of the instrument transferring title is made a prerequisite to the recording of it, nor is the record or a certified copy of it made evidence of any fact, unless, probably, the fact of record simply.
I am of the opinion that the terms of the act of 1850 do not require us to adopt the defendant’s construction of it;' but that its requirements are only additional to those of the sta *93 tutes of the States. It seems to me it was passed to apply between the government and the owners of a certain class of vessels. That its purpose was to secure a complete record in the office of the collector of customs of the title'to enrolled and registered vessels, and its object was not to regulate and control the transfer of property in" vessels generally, but to provide a custom house regulation which would better protect the government against violations of its revenue system, and enable its officers to enforce the rules relating to the national commerce. The recording of bills of sales, mortgages, &c., Of vessels registered or enrolled in the office of the collector of customs: the specifying the name of the vendor and vendee, their respective interests; the verification of these facts by the owner, are mere regulations to prevent abuse, and to enable the officers of the general'government to more successfully detect and guard against infractions of the laws regulating commerce with foreign nations and among the several States. By adopting this construction, both the act of Congress and the statutes of the several States will have force and effect, and conflict be avoided; whereas, if we regard the enactment of Congress as a statute of frauds, and thé exercise of a power to regulate the ownership, transfer and evidence of title of that species of personal property in an enrolled or registered vessel, there will be direct conflict, and one or the other must yield. It is, at least, doubtful whether Congress has any power to pass any law having the effect claimed for this act by the defendants; but regarding it as a mere commercial regulation, intending to apply only between the government and a certain class of vessels, the power is not doubtful. We are not, if it can be avoided, to adopt such a construction of a law as involves a doubtful exercise of legislative power in its passage.
I think, therefore,, that the act of Congress did not annul the Illinois statute, but that they may both stand and be harmonized, and force and effect given to both. The recording of the defendant’s mortgage, under and in compliance with the act of Congress, did not give such notice to the plaintiff as *94 dispensed with a compliance with the statute of the State of Illinois, and such mortgage was consequently void as against the plaintiff.
The judgment of the Superior Court of Buffalo should be affirmed.
All the judges concurring,
Judgment affirmed.