BURK vs. THE STATE.

ERROR to *Washington* county court. An indictment, containing two counts, one for a rape committed on the body of *Catharine Maria Brawner;* and the other for an assault, with intent to commit a rape, on the same person, was found in the county court of *Frederick* against the plaintiff in error, at February term 1809, and removed, on his suggestion and affidavit, by the transmission of a *transcript* of the record to *Washington* county court. The nature of the indictment, and the facts upon which the questions of law were raised, sufficiently appear in the opinion of the court below, delivered by

*An indictment containing two counts, one charging felony, and the other a misdemeanor, was held to be good.*

*After a prisoner has pleaded generally to an indictment, having two counts, the jury may be sworn and charged upon one of the counts only, to the exclusion of the other.*

*When nine jurors are sworn in a criminal case, and the rest of the original pannel is exhausted by peremptory challenges, the court can legally award an order for the summoning only three talesmen, and when eleven are sworn, to summon but one.*

*As to the manner of awarding a venire for summoning talesmen in criminal cases, capital.*

*As to the joinder of offences in criminal cases, and the joinder of causes of actions in civil cases.*

BUCHANAN, Ch. J. This case now stands on a motion in arrest of judgment. The indictment contains two counts—the first charging a *rape,* and the other an *assault with intent to commit a rape.*

The prisoner was arraigned upon the whole indictment, and pleaded generally, not guilty. The attorney for the state then elected to proceed against him on the *first count* in the indictment, and the jury were accordingly sworn, and charged upon the *first count* alone, and found him guilty of the offence therein alleged, particularly confining their verdict, by the expressions of it, to the *first count;* on the *second count* no verdict was given.

Fifteen of the jurors returned were peremptorily challenged by the prisoner when put upon his trial, and nine sworn, which exhausted the original pannel. On motion of the attorney for the state, an order to the sheriff to summon three talesmen, was awarded by the court, two of whom were sworn, and one challenged. An order to summon one talesman was then awarded on the application of the attorney for the state, and the person summoned, sworn, which made up the legal number of twelve sworn on the jury.

There are three questions for the consideration of the court, growing out of the indictment and proceedings thereon, and the reasons assigned in arrest of judgment.

*First.* Whether the indictment, containing two counts, one charging a *felony,* and the other a *misdemeanor,* is radically bad?

*Secondly.* Whether, after the party had pleaded generally to the indictment, the jury were legally sworn and

1809

Burk
vs
The State

charged upon one of the counts only to the exclusion of the other. And

*Thirdly.* Whether, when nine jurors were sworn, and the rest of the original pannel exhausted by peremptory challenges, the court could legally award an order to the sheriff to summon only three talesmen; and again, when eleven were sworn, to summon but one?

In the examination of these questions, the order in which they are stated will be inverted; and the manner of supplying the jurors by talesmen, be first considered.

It cannot be doubted, that in this state, a *tales de circumstantibus* may be awarded in capital cases; such is the uniform practice, and such are the provisions of the statute of 35 *Henry VIII. ch.* 6. But it is contended that as three were wanted in the first instance to supply the deficiency, and, as the prisoner, (having challenged only fifteen,) was entitled to five more peremptory challenges, a less number than eight could not be applied for by the prosecutor, or awarded by the court. And the same ground is taken against the second order. But this idea is unsupported by authority. Several authorities have indeed been cited and relied on in aid of the objection made to the number of talesmen awarded, which, when examined, only go to show, that courts may, if they please, to prevent the delay that might be occasioned by the defendant's challenges, award a greater number than was on the original pannel; and this is admitted. But no case has been cited, or authority referred to, which denies the power of courts to award only so many talesmen, as would, with those sworn, make up the number of twelve; or in support of the position, that a less number cannot be awarded than would be sufficient to make up the deficiency, after the defendant has gone through with his challenges; or in other words, that as the number deficient, and the remaining peremptory challenges to which the party was entitled, amounted together to eight, not less than eight could legally have been awarded in the first instance. Nor is the idea strengthened by the reason of the case, for if so many must always be awarded as will leave a sufficient number to supply the deficiency, after the defendant has completed his challenges, it would be impossible to ascertain the number proper to be summoned; for besides peremptory challenges, a prisoner is entitled to challenges for

1809.

Burk
vs
The State

cause, without number. And it is not to supply deficien-
cies occasioned by peremptory challenges only, that tales-
men are awarded; but deficiencies, occasioned in criminal
trials by any other cause, must be made up by talesmen as in
civil cases, in which peremptory challenges are not allowed.

There is no principle laid down more broadly in the
books, than that the award of talesmen must be repeated
until the legal number of twelve is completed, the subse-
quent tales being always for a less number than the for-
mer; and this precludes the idea that the award must al-
ways, in the first instance, be of so many as to leave
enough to supply the deficiency, after the party has com-
pleted his challenges; for in that case, there could never
be a second tales ordered. It is true that in capital cases,
courts may, if they please, award an order to the sheriff
to summon more than the precise number necessary to sup-
ply the deficiency, though there is no obligation on them
to do so; and if, in this case, the prisoner, or his counsel,
had requested a greater number to be summoned, he would
have been gratified. But an order for three only in the
first instance, and one in the second, was prayed by the
attorney for the state, and each prayer and order acquies-
ced in at the time by the counsel for the accused. The
second tales was for a less number than the first, and each
was for the precise number necessary, with those sworn,
to make up the legal number of twelve, and in strictness
of law, that is all that is required in such case; and as far
as this court are informed, is in strict conformity with the
practice throughout the state.

*The second question,* "whether, after the prisoner had
pleaded generally to the indictment, the jury were legally
sworn and charged on one of the counts only?" is fully re-
solved in *Young vs The King*, 3 *T. R.* 106; in which it is
said, "that if an indictment contains several counts for se-
parate offences, the court may quash it before the party
has pleaded, or the jury are charged; but if it should not
be discovered until after the defendant has pleaded, or the
jury are charged, the judge may put the prosecutor to elect
on which charge he will proceed."

That case goes much farther than the present, for in
that it is laid down, that not only after the party has plead-
ed generally to the indictment, but after the jury are
sworn upon the whole issue, for they are never charged be-

fore they are sworn, the court may make the prosecutor elect on which count he will proceed, and in this case though the attorney for the state did not elect to proceed on the first count alone, until after the prisoner had pleaded, yet it was done before the jury were either charged or sworn; and if the position taken in the case referred to is tenable, the proceedings on that part of the case before the court are correct.

The next and only question remaining to be considered, is, "whether the indictment containing two counts, one charging a *felony* and the other a *misdemeanor*, is substantially vicious," as is contended for on the part of the prisoner?

The exception taken to the indictment is attempted to be supported by assimilating the proceedings in criminal trials, to those in civil cases, which is not correct to the extent contended for.

If entire damages be assessed on a declaration containing several counts, any one of which is bad, it is error; but there is no principle better established, than that if a general verdict of guilty to be found on an indictment containing several counts, it is sufficient, if one is good, although all the rest are bad.

It is objected, that a *felony* and a *misdemeanor* can no more be charged in the same indictment than assumpsit and tort can be joined in the same declaration. But the reasons given in the books, why certain different causes of action may not be joined in the same declaration are, that the process is different; that they do not admit of the same general plea, and are not followed by the same judgment. And here again the analogy, contended for between the proceedings in criminal and civil cases, does not hold; for it has been long settled, that an indictment may charge several felonies of different grades, and requiring different legal judgments, as offences clergyable, and offences not clergyable, such as murder and manslaughter, burglary and larceny, &c. and that the party may be acquitted of one of the offences charged, and convicted of the other, and receive judgment accordingly; and if so, there is no substantial reason why a rape, and an assault with intent to commit a rape, may not be charged in the same indictment; for, leaving the act of 1793 out of consideration, the legal judgments required on two such counts are not more dissimilar, than on two counts, one charging burglary and

the other larceny, &c. And it is laid down in *Brown vs. Dickson*, 1 *T. R.* 276, and in *Dickon vs. Clifton*, 2 *Wilson*, 319, and others, that whenever the same plea may be pleaded, and the same judgment given on two counts, they may be joined in the same declaration.

Now apply that rule to the indictment in this case, and the objection falls; for in this state the legal process on each of the offences charged is the same; they admit of the same general plea, and by the act of assembly 1793, *ch.* 57, *sect.* 10, the same judgment may be pronounced.

It has been further urged, that a felony and a misdemeanor cannot be laid in the same indictment, because they require different modes of trial; on one charge the party accused having a right of challenge, and on the other not; and also being subject to arraignment on one, and not on the other. But neither the arraigning a man on an indictment for a misdemeanor, nor indulging him in a peremptory challenge, is error after verdict.

That objection, therefore, fails in reason, as it relates to the misdemeanor, nor does it appear to have any more weight as it applies to the charge of felony; for the party accused having no right to peremptory challenges on the count for misdemeanor, could not, by the addition of that count, be in any manner prejudiced in his challenges, or otherwise, on the count for felony, before the act of 1802, *ch.* 69.

It is true, that in this state, under that act of assembly, a party, indicted for a misdemeanor, is entitled to a pannel of twenty jurors, four of whom he may strike out; but that affords no stronger argument against the uniting a felony and a misdemeanor in the same indictment, than the right which every one, charged with a capital offence, has to twenty peremptory challenges, does to the joining several capital felonies in the same indictment; and it is a settled principle, that different *felonies* may be charged in the same indictment, and though they might confound the prisoner in his defence, or prejudice him in his challenges; for he might have reason to object to a juryman's trying him on one of the counts, whom he would wish to be sworn on the others; yet it is no objection to the indictment after verdict. Why then should the addition of a count for a misdemeanor vitiate an indictment charging a felony? But to prevent prejudice to prisoners in their challenges,

and confusion in their defence, courts may, and perhaps ought, before the jury are charged, to quash indictments containing separate and distinct felonies, or to make the prosecutor elect on which count he will proceed; so for the same reason, and particularly since the act of 1802, *ch.* 69, there would be a propriety in pursuing the same rule in relation to indictments charging a felony and misdemeanor.

If, as it is alleged, no case of an indictment charging a felony and a misdemeanor, is to be found in the books, it affords no argument against the correctness of such an indictment; the case may never have arisen, or the principle may never have been questioned, and therefore not reported.

And if this is a question of first impression, it must be decided on principles of analogy to other cases; and thus tested, the indictment does not appear to be defective; not on account of the modes of trial in cases of felony and misdemeanor being different, for it is no objection, after verdict, that a traverser on an indictment for a misdemeanor was arraigned, or indulged with a peremptory challenge.

In 2 *East's Crown Law*, 1023 and 1029, 2 *Hawkins's Pleas of the Crown*, 625, and *Kelyng's Reports*, 29, it is laid down as settled law, that if the special circumstances of the case be set forth in an indictment for an offence laid as felony, and the defendant found guilty generally, and afterwards the court should be of opinion that the fact does not amount to felony, but only to a trespass, judgment may be given as for a trespass only.

In such a case, the party accused would be arraigned, and have his challenge, and yet the offence contained in the indictment only a trespass or misdemeanor, though charged as a felony; and the principles so established, may perhaps be applied with force to the present question in all its parts; for if a misdemeanor may be charged as a felony, and punished as a misdemeanor, why may not a felony and a misdemeanor be laid in the same indictment, and the party be acquitted of the felony, and found guilty of the misdemeanor, or *e converso?* Not on account of the party being liable to be prejudiced in his challenges, or the jury perplexed in the application of the testimony; for the same objection might be urged, and with more

force, to an indictment charging separate and distinct fe-
lonies; and yet such indictments are held to be good, and
not because the different counts would require different
legal judgments; for different *felonies* may be laid in the
same indictment, which are differently punished, and re-
quire different legal judgments, such as murder and man-
slaughter, burglary, and larceny, &c. Moreover, an indict-
ment charging a rape, and an assault with an intent to
commit a rape, is less objectionable here than in *England;*
for in this state, under the act of 1793, *ch.* 57, *s.* 10, a
conviction of either offence may be followed by the same
legal judgment.

In this particular case the two offences charged in the
indictment are connected together, and the misdemeanor
merged in the felony. No evidence could have been admis-
sible on one count, that was not applicable to the other,
which guards it against the objection, that the jury might
be confused in the application of testimony of a different
nature, and goes to show the compatibility of the two
counts; or, if the misdemeanor is to be considered as a
separate and distinct offence, committed at a different
time, and not a constituent part of the felony charged, it
does not alter the case.

The great strictness observed in criminal prosecutions,
grows out of the benevolent principle, that every prisoner
should have a fair and impartial trial; and this the prisoner
in the present case has had.

The attorney for the state, as he had a right to do, aban-
doned the second count, and elected to proceed on the
first, upon which the jury were accordingly sworn and
charged. There was no application to quash the indictment,
nor any objection made at the trial, to the form of proceed-
ing; but the prisoner chose to take his chance before the
jury on the charge of felony, to which the trial was exclu-
sively confined. He was not, nor could he, in any man-
ner have been prejudiced by the addition of the second
count, which being abandoned before the jury were
sworn, stood as inoperative as if the grand jury had found
the indictment a true bill as to the first count, and indors-
ed *ignoramus* on the second; which they might have done,
and the indictment have been good as to the count found
a true bill. He had, under this mode of proceeding,
every privilege and advantage which he could have had if

the indictment had contained only the count on which he was tried; and now to arrest the judgment would be a perversion of justice.

Upon the whole, in the opinion of the court, the reasons assigned in arrest of judgment are unsupported.

*Judgment* was entered on the verdict, sentencing the prisoner to be hung, &c. Sentence of death was pronounced by the chief judge; and afterwards the prisoner removed the indictment and proceedings to this court by a writ of error.

The cause was argued before CHASE, Ch. J. POLK, NICHOLSON, and EARLE, J.

*Martin*, *Taney*, and *Lawrence*, for the Plaintiff in error, raised the same objections which were urged in the court below on the motion in arrest of judgment.

On the *first objection* they contended, that felony and misdemeanor were different offences, and ought not to be found in the same indictment. That under those counts, different modes of trial were required. The prisoner must be arraigned in the first, and not in the other; he must be present at the trial of one, and he need not be at the trial of the other. Judgment might be passed against him on one, when he was not present; but in the other, it could not be done except he was present. In the one, he might challenge peremptorily to the number of 20 jurors; but in the other, he had no such right. In the last, he might strike out four from the pannel of jurors, and so might the attorney for the state; but in the former, the attorney for the state could not challenge or strike out from the pannel. That the judgments were different; in one, the life of the party might be in jeopardy; in the other, it would not be. That the *benefit of clergy* might be demanded in the one, and not in the other. They cited 4 *Blk. Com.* 216, 375. 2 *Hale's P. C.* 173. 2 *Hawk.* 29, *ch.* 25, *s.* 59. *Crown C. C.* 111. *Brown vs. Dickson,* 1 *T. R.* 276. *The King vs. Roberts, Carthew,* 226. *Rogers vs. Cook, Ibid* 235. *Young vs. The King,* 3 *T. R.* 98, *per* Lord *Kenyon,* on the fourth objection. 1 *Bac. Ab.* tit. *Actions in General,* (C.) *Dalston vs. Janson,* 1 *Ld. Raym.* 58. S. C. 1 *Salk.* 10. *Courtney vs. Collet,* 1 *Ld. Raym.* 272. *Howard vs. Bankes,* 2 *Burr.* 1114. *Gilb. Hist. C. P.* 6. *The King vs. Higgins,*

1809.

Burk
vs
The State

1 *Ventris,* 366. *Mast vs. Goodson,* 3 *Wils.* 354. *Dickon vs. Clifton,* 2 *Wils.* 319. *Swithin vs. Vincent, Ibid* 227. *Bage vs. Bromwell,* 3 *Lev.* 99. 2 *Hawk. ch.* 25, *s* 46, 97. *Rex vs. Wilkes,* 4 *Burr.* 2527. *Rex vs. Pewtress,* 2 *Stra.* 1026. *Hardw.* 203. *The King vs. Stratton, Dougl.* 240, 241. *Rex vs. Fieldhouse, Cowp.* 325. *The King vs. Wheatley,* 1 *W. Blk. Rep.* 275. *The King vs. Clendon,* 2 *Ld. Raym.* 1572. S. C. 2 *Stra.* 870. *Rex vs. Benfield,* 2 *Burr.* 980, 984. *The King vs. Sidley,* 1 *Siderf.* 168. 2 *Hawk. ch.* 25, *s.* 62. *The State vs. Ringgold,* (in the general court, April term, 1792.) *Rex vs. Cross,* 1 *Ld. Raym.* 711. 2 *Hale,* 172. *Rex vs. Westbeer,* 2 *Stra.* 1133. *Leach C. L.* 15. 2 *East's C. L.* 1023, 1028, 1031. 4 *Blk. Com.* 221. *Martyn Page's* case, *Cro. Car.* 332. As to the right and nature of the *benefit of clergy,* they cited 2 *Hawk. ch.* 33, *s* 20, 23, 25, 112, 114, 115, 121, 128, 129, 132. *Stat.* 1 *Edw.* VI. *ch.* 14, *s.* 5. *Stat.* 5 *Ann, ch.* 6. 4 *Hen.* VII, *ch.* 13. 2 *Harr. Ent.* 52. *Cuddington vs. Wilkins.* Hob. 67, 81. *Searle vs. Williams, Ibid* 294. 5 *State Trials,* 168. *Leach C. L.* 360. 2 *Hawk. ch.* 36, *s.* 1, 10, 14. *Hale,* 220, 251; and 2 *Hawk. ch.* 47, *s.* 6.

On the *second objection* they contended, that the counsel for the state could not elect on what count he would prosecute; but he must prosecute on the case before the court. They cited 4 *Blk. Com.* 339, 375. 2 *Hawk.* 59, *ch.* 25, *s.* 97. *Rochel vs. Stedle, Hardres' Rep.* 166. 1 *Blk. Com.* 142. *Rosse's* case, 3 *Leon.* 83. 2 *Roll. Ab.* 722, *pl.* 19. *Graves vs. Morleg,* 3 *Lev.* 55. 1 *Inst.* 227. *Hooper vs. Shepherd,* 2 *Stra.* 1089. *Rex vs. Pewtress, Ibid* 1026. *Gildart vs. Rogers,* (in the general court, October term, 1786.) *Young vs. The King,* 3 *T. R.* 106, per *Buller, J.* 2 *Hawk. ch.* 27, *s.* 92. *Fitz. Ab.* tit. *Discontinuance,* 14, 35. *Bro. Ab.* tit. *Discontinuance of Process,* 62, *pl.* 55. *Clerke vs. Clerke, Cro. Eliz.* 622. *Sampson vs. Tothil, et al.* 1 *Siderf.* 325. 2 *Hawk. ch.* 38, *s.* 3. *Coke's Ent.* 57, 372, 379, 381, 385, 387, 390. *Rast.* 43, 412. *Rex vs. Boyce,* 4 *Burr.* 2084, 2085. *Tremaine,* 287. *The King vs. Dowlin,* 5 *T. R.* 311. *Foster's* case, 9 *Coke,* 63. 2 *Hawk. ch.* 47, *s.* 5, 6, 8, 9, 11, 14; and *Fulmerston vs. Steward, Plow.* 109.

On the *third objection,* as to the *tales,* they cited *Verni, qui tam vs.* ——, 1 *Lev.* 223. *The Queen vs. Banks,* 6 *Mod.* 246. *Gree vs. Sharp, Ibid* 265. 2 *Hawk. ch.* 41,

s, 12. *Denbawd's* case, 10 *Coke*, 105. *Bro. Ab.* tit. *Octo Tales*, 6, 7, 8, 11, 15, 16, 19. *Vin. Ab.* tit. *Trial*, 321. 2 *Hawk.* ch. 41, s. 12, 13. 2 *Hale*, 266. *United States vs. Burr*, 1 *Burr's Trial*, 420. *God.* 204. *The State vs. Orndorff*, (in the general court, October term, 1783.) *Hulton vs. Hun*, *Cro. Eliz.* 849, 850. *The Queen vs. The Inhabitants of Stretford*, 2 *Ld. Raym.* 1170. *The King vs. Wheatley*, 1 *W. Blk. Rep.* 275. 2 *Hawk.* ch. 27, s. 105. *Ibid* ch. 25, s. 97; and *Rex vs. Wilkes*, 4 *Burr.* 2527.

*Johnson*, (Attorney General,) contra, on the *first objection*, cited *Young vs. The King*, 3 *T. R.* 98. *Holmes's Case*, *Cro. Car.* 376. S. C. Sir *Wm. Jones*, 351. *The King vs. Joiner*, *Kelyng's Rep.* 29. The act of 1793, ch. 57, s. 10. *Brown vs. Dickson*, 1 *T. R.* 266. *Dickon vs. Clifton*, 2 *Wils.* 319. 2 *East's C. L.* 1023, 1029; and 2 *Hawk.* 525.

On the *second objection—Rex vs. Benfield*, 2 *Burr.* 980; and *Young vs. The King*, 3 *T. R.* 106.

On the *third objection*—The *Stat.* 35 *Hen.* VIII. ch. 8. *Denbawd's* case, 10 *Coke*, 103. The act of 1798, ch. 94; and 4 *Blk. Com.* 354.

JUDGMENT AFFIRMED.

---

## Norfolk's Ex'r. *de son tort*, vs. Gantt.

1809

Norfolk
vs
Gantt

June

Error to *Calvert* County Court. An action of *debt* was brought on a *single bill*, by the defendant in error, against *James Norfolk* in his life-time, to which he appeared and pleaded *payment*. His death was afterwards suggested, and a summons issued for the plaintiff in error, as executor *de son tort*, to appear and defend the action, who being summoned, appeared, and afterwards confessed the action, and that the debt demanded was due to the defendant in error, together with a sum as damages and costs. Upon which an *auditor* was appointed to ascertain the sum for which judgment should be rendered, according to the act of 1798, ch. 101, *sub ch.* 8, s. 9. The auditor reported, that it did not appear by the records of the orphans court of the county that any administration had been granted on the estate of the deceased, so that he

*On the death of a defendant in an action of debt, &c. a summons may issue to an executor de son tort, (there being no legal executor or administrator of the deceased,) to appear to and defend the action.*

*Where an executor de son tort, being summoned, appeared to an action of debt brought against the deceased, and confessed the action, and admitted the debt was due to the plaintiff, an auditor was then appointed to ascertain the sum for which judgment should be rendered, regard being had to the assets, &c.*

ding to the act of 1798, ch. 101, *sub ch.* 8, s. 9. This appointment of auditor was afterwards stricken out by the county court, and a judgment was rendered on the confession above mentioned, for the debt and costs, *de bonis testatoris*, si non de bonis proprits as to costs. Error being brought, the judgment was reversed by the court of appeals.