UNITED STATES v. PETERSBURG REGISTRARS OF ELECTION. See Case No. 16,036.

## Case No. 16,037.

## UNITED STATES v. PETERSON et al.

[1 Woodb. & M. 305.] [1]

Circuit Court, D. Massachusetts.   May Term, 1846.

REVOLT OF SEAMEN—AUTHORITY OF MASTER—EXCESSIVE PUNISHMENTS — ALIEN SEAMEN ON AMERICAN SHIPS—INDICTMENT—JOINDER OF OFFENCES—NOLLE PROS.

1. Revolts on shipboard are to be considered now as defined by the act of congress of March

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

3, 1835, c. 40 [4 Stat. 775], and consist not only in attempts to usurp the command from the master, or to transfer it to another, or to deprive him of it for any purpose by violence, but in resisting him in the free and lawful exercise of his authority.

[Cited in U. S. v. Coppersmith, 4 Fed. 205; U. S. v. Huff, 13 Fed. 637.]

2. So if no actual revolt is made, that act punishes, though in a milder manner, attempts to commit a revolt and various acts likely to lead to mutiny, and, among them, to assemble with others on board "in a tumultuous and mutinous manner."

3. The crew have no right to disarm the captain, though using a deadly weapon, if they are in a mutinous state, and exercising personal violence to resist his lawful commands.

[Cited in Fuller v. Colby, Case No. 5,149.]

4. Seamen must obey the lawful commands of a master, as well as refrain from acts of piracy and mutiny; and look for redress against excessive punishment, or illegal orders, to the tribunals at home, and the acts of congress for their protection, rather than to violence by themselves at sea.

[Cited in Fuller v. Colby, Case No. 5,149.]

5. Foreign seamen on board American ships, are as much subject to punishment for such disobedience or violence as Americans, and are alike to be protected and redressed on their return home.

6. To render a vessel American, so as to punish offences on board of her, it is enough to show, that she sailed from and to an American port, and was apparently owned and controlled by citizens of the United States.

7. If there be two counts in one indictment for offences committed at the same time and place, and of the same class, but different in degree, as one for a revolt and another for an attempt to excite it; the judgment will not be arrested, though a verdict of guilty is returned on both.

[Followed in U. S. v. Stetson, Case No. 16,390. Cited in U. S. v. Stone, 8 Fed. 252.]

8. The district attorney is allowed before judgment to enter a nol. pros. on one, if he deems it advisable.

9. It is not a misjoinder of offences in different counts in the same indictment, unless they belong to different families, or the judgments and punishments are inconsistent with each other.

[Cited in People v. Sweeney, 55 Mich. 588, 22 N. W. 50; State v. Smalley, 50 Vt. 741.]

This was an indictment against the prisoners [John Peterson and others] found at this term, in two counts.

The first count alleged, that one Baily Foster, on the 7th of May, 1846, was master on board the American vessel Charles Carroll, bound from New Orleans to Boston, and the prisoners, a part of his crew; and that, on the day aforesaid, upon the high seas, they resisted him with force, while "in the free and lawful exercise of his authority," and thus created a revolt, contrary to the act of congress in such case made and provided. The second count charged them, at the same time and place, with having assembled together in said ship, "in a tumultuous and mutinous manner," contrary to the same act of congress.

The prisoners on being arraigned, pleaded not guilty.

C. B. Goodrich, for prisoners.
R. Rantoul, U. S. Dist. Atty.

The latter relied upon the act of congress, passed April 30, 1790, § 1 [1 Stat. 112], as defining the offence described in the first count; and the second section of the same act, as defining that described in the second count. And, on being questioned by the counsel for the prisoners, whether he intended to rely on both counts for the punishment of the conduct of the prisoners on that occasion, replied in the affirmative, as the transaction, though a single one, might be considered on the evidence as constituting the second offence, if it did not amount to the first.

Evidence was then offered to show, that the Charles Carroll was owned by American citizens, and was fitted out and sailed under their orders, with Baily Foster as master, and the prisoners, a portion of the crew, were under contract at a certain rate of wages, from New Orleans to Boston.

This evidence being offered, and not the register of the vessel or the shipping articles, its admission was objected to by the counsel for the prisoners. But THE COURT overruled the objection.

The district attorney then, after showing those facts, proved, that on the day stated in the indictment, about twenty-eight miles from this port, the captain gave orders to have all hands come on deck and prepare the vessel for going into port. That the mate communicated these orders below, as well as to the portion of the crew then on deck; and they were promptly complied with except by the four prisoners. They constituted together one watch, that had recently been relieved. It appeared, that they refused to assist in clearing up and preparing the ship, as the captain and mate desired; objecting that the other watch had time enough to do all which was necessary before reaching Boston harbor, and that they were unwilling to do any thing which was directed except to aid about the anchor and chains. An altercation at once commenced on the subject between these men and the mate, which soon extended to other matters concerning the quality of the provisions which had been furnished to them on the voyage, and some difficulties with the second mate on the part of Peterson. The captain, being attracted by the loud conversation, came up to them, and asked what was the noise? and seeing that Peterson had an iron belaying pin in his hands, which he seemed to be swinging towards the mate, ordered him to lay it down. This Peterson did not do, and as the captain stepped forward to take it from him, Peterson struck at him with it twice, but the blows were avoided by the captain, who then run below for his pistols and sword. Some one cried out, "Draw knives," and one of the four did it, and all fell upon the two mates and the captain, as he returned with his weapons, and knocked the whole of them down, and disarmed him and broke one of his arms. After recovering their feet and going aft, they consulted together, and did not deem it safe to make any further efforts to enforce obedience to the captain's commands as to clearing and preparing the ship for coming into port. This was about eight o'clock, a. m., and at one o'clock in the day, when the men were called up again, all obeyed except Hanson, who was stated to be injured so as not to be able to work. Various threats and taunts, and many details of the rencounter and injuries were testified to, which need not be repeated.

On all the material facts there was little if any conflicting testimony, between the several witnesses on both sides. After the evidence and arguments to the jury were closed, the counsel for the prisoners requested the court to give the following instructions on the law of the case:

First count: (1) To sustain the first count in the indictment, the jury must be satisfied beyond reasonable doubt, that the prisoners, or some one or more of them, usurped the command of the ship, and overthrew that of the master. (2) That they, or some one or more of them, took possession of the vessel against the will and in defiance of the authority of the master, or put another person in command and control of her navigation against his will. Second count: (1) To sustain the second count in the indictment, the jury must be satisfied beyond reasonable doubt, that the prisoners, or some one or more of them, assembled with intent to overthrow the legitimate authority of the master, and to remove him from his command. (2) That they, or some one or more of them, assembled with intent to take possession of the vessel by assuming the government and navigation of her, or with intent to transfer their obedience from the master to some other person. General instruction: If the prisoners had reasonable cause to believe and did believe, the master intended to make an attack upon them or either of them, with any dangerous weapon or weapons, they had authority, in self-defence, to resist or disarm him.

WOODBURY, Circuit Justice, charged the jury, and, in relation to the law applicable to the subject, informed them that he did not feel justified in stating it to be as the counsel for the prisoners desired. He must decline giving it to them in charge, as requested, on any of the points, without important limitations and qualifications. However revolts may have been defined at common law, or under the act of congress of April 30, 1790, c. 9 [1 Stat. 112], they were now to be considered and punished only as provided by the act of the 3d of March, 1835, c. 40 (4 Stat. 775). That act, instead of punishing as a revolt only one kind of violence on shipboard, such as to usurp the command of the master; or another kind,

such as to transfer his command to a different person, or another still, to deprive him of his command, without either usurping or transferring it, made each of them an offence; and also made it an offence to "resist or prevent him in the free and lawful exercise of his authority and command." Conceding that all the cases cited, as to decisions under other acts of congress and at common law, were correct, as the laws then existed for a guide, but on which he expressed no opinion (U. S. v. Sharp [Case No. 16,264]; U. S. v. Bladen [Id. 14,606]; U. S. v. Cassedy [Id. 14,745]; U. S. v. Smith [Id. 16,344]; U. S. v. Hemmer [Id. 15,345]; U. S. v. Savage [Id. 16,225]; U. S. v. Kelly, 11 Wheat. [24 U. S.] 417), the law now in force made the mere resistance to the master's lawful authority punishable, and for that and that alone the prisoners were indicted, and were to be tried under the first count. To make them guilty of this offence, it was not necessary that they should either deprive the master of his command, or usurp it themselves, or transfer it to another; but it was enough, if he issued lawful orders which they disobeyed, and with violence resisted their enforcement.

So as to the second count, it was framed in order to reach another and milder offence, under the second section of this same act of congress, which consisted in behavior likely to excite to, or end in, revolt or mutiny, although no actual revolt should be believed by the jury to have occurred. Under the first section an actual revolt was liable to be punished with great severity, even to ten years hard labor and $2,000 fine, if of an aggravated and flagrant character. On the contrary, if of a mild character, the court was wisely vested with a discretion to inflict any small portion of the above fine and imprisonment, according to the nature and aggravation of the offence, and thus make it in a proper case, not so severe, as some bad attempts at mutiny under the second section, where the punishment may range as high as $1,000 fine and five years' imprisonment. The offence, under this last section, may be committed, likewise as under the first one, in various modes. One is, by endeavoring to make a revolt or mutiny on shipboard in any way; another is, by contriving with any person to do it; another, by soliciting or stirring up any of the crew to disobey or resist the lawful orders of the master, or to refuse or neglect their duty, or to make a riot on board, or unlawfully to confine the master; or, as in the second count in this indictment, "to assemble with others on board in a tumultuous and mutinous manner." You are instructed, that to convict of this last kind of outrage, it is not necessary to prove guilt of any of the other kinds described, either in the second or first section. But it is sufficient, in a tumultuous and mutinous manner, to collect together; that is, in a

noisy and insubordinate state, endangering the police of the vessel, and likely to terminate in actual disobedience of orders, and actual resistance to the master's lawful authority.

In respect, also, to the general instruction, which the prisoners' counsel asks as to the right of the crew to disarm the captain, when about to attack any of them with a deadly weapon, it is clear that, if the master, without any disobedience of orders or resistance, is about to attack any of the crew, he might be disarmed, if done, repelling great violence, which is threatened and impending without any justifiable cause. But if the crew are disobedient, and resort to personal violence and seditiously resist the master in enforcing his lawful orders, he can then rightfully arm himself; and, if only intending to use his weapons, so far as is necessary to produce obedience and put down mutiny, he cannot be properly opposed or disarmed by his crew. The judge stated, that the safety of the lives of the crew as well as of the officers, and of the vast property afloat in our commercial marine, depended much upon the strict discipline and careful police enforced by commanders of vessels. And while the law exacted obedience to all lawful commands of the captain, as the wisest course to secure those important objects, judging from the experience of all ages, and justified also by his superior skill and intelligence, and the contract itself of the crew to obey him, it, on the other hand, carefully protected them from any abuse and oppression under such enlarged powers.

The very same acts of congress, which inflict heavy punishment on the crew for dangerous resistance to the master, inflict heavy penalties on him for unjustifiable blows, or unusual punishments, or insufficient or unwholesome food; and a seaman, when wronged abroad, can always rely with safety on ample redress at his return home, through the laws and the juries and judges of his country. It behooves him, then, with patience and order, as well as fidelity, to continue to discharge his own duties to the laws and flag of the Union, convinced as he should be unfalteringly, that none will be allowed to violate them with impunity. It is not sufficient to have no intention to assume the command of the vessel, or to destroy her, or carry her off like pirates, but there must be no insubordination, no disobedience, no violence, towards those who, by law as well as contract, are to rule and not be ruled on board the ship. However uneducated or inexperienced, seamen cannot but know, that they and the master on the deck of the vessel are not acting together in the same capacity, and like equals or citizens, adopting or opposing measures, by each one's taste, or by the popular vote, as at a town-meeting; but acting together for a time, one with large powers, for the benefit of all,

and the others without those powers, for the same benefit of all, and by the previous agreement of all. And thus while this relation between them requires nothing from sailors but what they can perform—implicit obedience to lawful commands—it protects them from any illegal exactions,* and punishes sternly all wanton abuse of their dependent condition.

It was objected, also, on the evidence, that the prisoners were born abroad, and have not been shown to be naturalized, and hence were not liable to be punished at all under the acts of congress, for mutiny or revolt. But the court give it to you in charge, that it is sufficient to render them liable, if the Charles Carroll was an American vessel, and they were on board engaged to serve as a part of her crew. This imposed a duty towards them, on the one hand, as in an American ship, whose deck for this purpose, while on the high seas, is as a part of our territory, and all within it—all under our flag—are entitled to protection, and are receiving the benefit of our laws in defence of their persons and property from outrage. On the other hand, it rendered them subject and responsible, while their service continued within our jurisdiction, to obedience to law and the lawful commands of the master. Indeed, they had virtually stipulated for this in their shipment, as well as in their voluntary selection of our government for their domicil. Beside this, a portion of the crews in American vessels are allowed by law to be foreigners; and, for aught which appears, these men, though born abroad, may have since become naturalized. But, without dwelling on these considerations, the vessel being in the possession and control of Americans, as owners, and having sailed from and to an American port, under an American captain, and under a contract for service made in this country, it is primâ facie, enough to render them liable under this act of congress, without the production in the first instance of any register of the vessel or the shipping articles. Abb. Shipp. 96; 3 Phil. Ev. 1151; Robertson v. French, 4 East, 130, 137. "There are many cases in which the possession of property and acts of ownership exercised over it, furnish presumptive evidence of a title to it; and some, also, in which the possession alone is sufficient to maintain an action, although the legal title may be outstanding in another." Abb. Shipp. 60; 5 Esp. 88; 2 Taunt. 302. And it has been decided in this country, that we may establish the national character of a ship by that proof, even in piracy. U. S. v. Furlong, 5 Wheat. [18 U. S.] 184; [U. S. v. Amedy] 11 Wheat. [24 U. S.] 392; 7 Johns. 308; 15 Johns. 298; 16 Mass. 336; U. S. v. Jones [Case No. 15,494]; 14 Johns. 201. Because certain documents are required to prove ownership for fiscal or international objects,

but not for titles between individuals, or as to offenders. [U. S. v. The Pirates] 5 Wheat. [18 U. S.] 199.

The jury returned a general verdict of guilty, against the prisoners.

Their counsel then moved in arrest of judgment, on the ground, that the two counts were for different offences, not alike in degree or punishment, and were, therefore, misjoined.

WOODBURY, Circuit Justice. I have taken some time to examine this motion in arrest of judgment, and shall be happy to give to the prisoners any benefit which can grow out of it; or if none, any mitigation in the punishment to be inflicted, which the circumstances in their case may show to be exculpatory. There certainly are some such circumstances, as the prisoners did not continue to persist in their disobedience, nor evince any disposition to alter the navigation of the vessel, or to destroy her, or assume permanently the command of ·her. But clearly for some time, they opposed the lawful authority of the master. They did this, also, in a tumultuous and mutinous manner; and they endangered the lives of the master and mates as well as their own, by their disobedience and violence, and prostrated all the salutary police and order of the vessel, for a time, as effectually as if they had meditated gross acts of piracy. They must, then, be made an example of, in order to deter others from like outrages, as well as to punish duly their own misconduct; and if it can be done legally under the present form of the indictment and the deliberate finding of their guilt by the jury, it must and should be. The rules, applicable to objections like this, have been much controverted; and though, in my view, there are still doubts as to some of them. they may be considered as settled to the extent I am about to explain.

1. Every indictment with only one count, and each count in itself ought, under the rules of good pleading, to describe but one distinct offence. 1 Chit. Pl. 201; 1 Chit. Cr. Law, 252; Rosc. Cr. Ev. 215; 1 Moody & R. 71; 1 Starkie, Cr. Pl. 246. Most cases hold, that if it describes more, the prisoner, on motion, before trial, may require the prosecutor to try only one, in order to prevent confusion and distraction as to different offences and different kinds of challenges and evidence, that may be admissible at times in trials for different crimes. See 1 Chit. Cr. Law, 253, and notes; Rex v. Kingston, 8 East, 41, 46; Young v. Rex, 3 Durn. & E. [3 Term R.] 98, 103; Kane v. People, 8 Wend. 203; 2 Camp. 131; 3 Camp. 132; State v. Nelson, 8 N. H. 163; Rosc. Cr. Ev. 215; 2 East, P. C. 515. Some cases would seem to limit this privilege or indulgence to indictments for felonies and not misdemeanors. 8 Wend. 208;

Rosc. Cr. Ev. 215. But others seem to extend it to both. See 3 Durn. & E. [3 Term R.] 107, by Justice Grose. As illustrative of this rule, it may be seen that robbery and assault with an intent to rob, should not be united in one count, or in one indictment with a single count. Galloway's Case, 1 Moody, Crown Cas. 234. See other cases, 2 Moody & R. 71. And the court, in its discretion, will either make the attorney for the government select and try but one offence on such motion before trial, or on demurrer or motion quash the indictment, if the offences are of a different nature, and not requiring a like form of plea and judgment, and are both described in but one count. Rex v. Kingston, 8 East, 41, 46; People v. Wright, 9 Wend. 193; U. S. v. Sharp [Case No. 16,-265]; 8 N. H. 163. But it has been held, that they will not require even that selection or quash the indictment, if the offences are as much alike in character and punishment, as "breaking and entering with intent to steal," joined in one count with "stealing." Com. v. Hope, 22 Pick. 1. See, also, Com. v. Tuck, 20 Pick. 356, and Com. v. Eaton, 15 Pick. 273. So if indicted in one count as receivers, and the other as principals. 1 Moody, Crown Cas. 234; Madden's Case, Id. 277. Or in one as principal in the first degree, and in the other in the second degree. Gray's Case, 7 Car. & P. 164; 1 Moody, Crown Cas. 351. So a receiver may be indicted as accessory in one count, and for a substantive felony in another. And though the judge might make the prosecutor elect, he will not, where it is clear there was but one offence, and the joinder cannot prejudice the prisoner. Rosc. Cr. Ev. 215; Jervis' Case, 6 Car. & P. 156; Rex v. Wheeler, 7 Car. & P. 170; Rex v. Austin, Id. 795. So in a prosecution for arson, it will not compel a selection if it was all one fire, and the houses of different persons were burned. Reg. v. Trueman, 8 Car. & P. 727. But where one count was for conspiracy and one for a libel, and no evidence against one defendant for the last, the court compelled a selection before a verdict. Reg. v. Murphy, 8 Car. & P. 297. It is for a reason somewhat similar to this, perhaps, and because the allegations for the higher offence include all which is necessary to constitute the smaller one of the same sort or family, that where the indictment is for murder, the prisoner may be convicted under it of manslaughter; or for assault with intent to kill, be convicted of an assault, and so onward through several classes and degrees of family crimes. Com. v. Briggs, 7 Pick. 177; Com. v. Cooper, 15 Mass. 187; State v. Shepard, 7 Conn. 54. But in Com. v. Roby, 12 Pick. 496, 505, the court held, that this could not be done if one offence was only a misdemeanor, and the other a felony. For then a conviction would be no bar to another prosecution for the original offence.

2. So if there have been a trial and conviction of one or both of the offences, thus united in one count, or in one indictment with a single count, the court will not generally sustain a motion in arrest of judgment, unless the two offences belonged to a different class or family of crimes. People v. Rynders, 12 Wend. 425; 2 Camp. 132-134; Rex v. Kingston, 8 East, 41, 46; Rex v. Johnson, 3 Maule & S. 539, 542; State v. Nelson, 8 N. H. 163. Some cases hold, it will not be done, unless the two offences required different forms, not merely degrees of punishment. Com. v. Symonds, 2 Mass. 163; Rex v. Johnson, 3 Maule & S. 539, 542; U. S. v. Sharp [Case No. 16,264]. Other cases seem to hold, that the two offences should require different challenges and modes of trial. See those cited in Burk v. State, 2 Har. & J. 426. Without some of these material diversities between the two offences, there having been a conviction on a full hearing, it does not appear expedient or proper, after verdict, to disturb it; and the more especially does it not, when, on a previous motion to limit the trial to one offence, the request would, in the exercise of a sound discretion, have probably been granted; and the prisoner, without delay or expense, have been allowed virtually all he now asks. But none of these rules or illustrations reach the present case, as here the two offences are set out in separate counts.

3. In such cases it seems to be equally well settled, that if two offences are described separately in two counts in one indictment, and there is a general verdict of guilty, the judgment will not be arrested as for a misjoinder, unless the offences are of a nature and character radically different, as well as requiring different judgments, different in kind, and not merely punishments differing in amount or degree. U. S. v. Sharp [Case No. 16,265], where it is admitted; Case of The Pirates, 5 Wheat. [18 U. S.] 184; U. S. v. Dickinson [Case No. 14,958]; Archb. Cr. Pl. 25, 26; Burk v. State, 2 Har. & J. 426; 8 N. H. 163. Where they are in different counts, they are, for most purposes, as if in different indictments. U. S. v. Sharp [supra]; 4 Hawks, 356; 2 Camp. 585. Some of the technical rules as to misjoinders in civil cases, do not apply here, as there; the forms of judgment in assumpsit and debt, &c., being different, prevent an union in the same writ of counts which sound differently as to the judgments required, though in one sense they may all belong to the large family of debts due, or contracts, though not to the smaller one of mere promises, or that of mere covenants. 2 Har. & J. 426. As illustrations of what is meant by this rule, it is laid down, that petit treason and murder may be united. 2 Hale, P. C. 173; 1 Hale, P. C. 378. Burglary and larceny. 2 East, P. C. 1023, 1028. Forgery of a writing and uttering it; or assault with an intent to kill, and a common assault. People v. Wright, 9 Wend. 193. The punishments in these cases

are often much more widely different than in this now under consideration; as in some of them one offence is a felony, and the other a mere misdemeanor, and if punished somewhat alike in some of them formerly, when capital crimes were so numerous, they were not punished alike in all the cases. It will be seen, however, that they belong in each instance to one genus or class. 1 Chit. Cr. Law, 255; 1 East. P. C. 408, 409. And in Rex v. Denon, 2 Leach, 608, the court censured the bringing of different indictments for different offences, if committed by the same person, and belonging to the same family of crimes. Some cases hold, however, that the court, before verdict, may exercise the same discretion as to selecting one of two distinct offences for trial, when set out in two counts, as when set out in one. Dunn's Case, 1 Moody, Crown Cas. 146. But this is a different question from that of objecting to the joinder, if in separate counts, by motion in arrest. Archb. Cr. Pl. 26. But in People v. Wright, 9 Wend. 193, there is at first an appearance of dissent from this result. It was there held, according to the marginal note, that if two offences are described in different counts, though of the same family, and they require different punishments, the court will arrest judgment. One punishment there was not less than ten years in the state prison. The other, not over five years. But in that case, on examining the details, it seems doubtful if any offence under the first count had been committed; and the court said they could not tell what punishment to inflict, unless they arbitrarily selected the second one, where the jury may have gone chiefly or entirely on the first. The indictment was said, by the court, to be drawn under one section of a law, when the offence was committed against or under another section. Hence the ground of the decision has been misapprehended, and subsequently in People v. Rynders, 12 Wend. 426, the court unhesitatingly held, a joinder of offences of the same family in different counts to be good, though the punishment of them was different; e. g., forging an instrument, and uttering it, knowing it to be false. They would not, even before trial, refuse to let the attorney proceed on both, if of like character, though liable to different punishments. U. S. v. Dickinson [Case No. 14,958]. And in Kane v. People, 8 Wend. 203, 208, it was held, that where two counts in the same indictment are for different offences, though felonies, it is no ground of error, or arrest, or demurrer. 2 Peake, N. P. 228, note. But if in such case, it is there said, the two offences are embraced in one count, the court may quash, or compel the attorney, before trial, to elect one, though they will not do even that in mere misdemeanors. Two counts often describe the same offence differently, and the jury return a general verdict, though only one offence is proved; and "no one (says the court,) ever supposed that formed a ground for arresting the judgment." And in such case, if one count is bad, the court say it will be presumed, that judgment will be rendered or has been, on the good one, rather than one which is defective. and the judgment will be good. 1 Johns. 320; U. S. v. Pirates, 5 Wheat. [18 U. S.] 184. Lord Mansfield regretted it was not so in civil cases. Doug. 730.

4. Again, it has been deliberately adjudged, that if one of the counts be double, or it is doubtful whether it be properly joined with the other, as being for an offence somewhat different in character and punishment, the judgment, after a general verdict, will not be arrested, but rendered entirely on the other count. Rex v. Fuller, 1 Bos. & P. 180, 2 Leach, 926. So it has been held. that the attorney-general, after verdict, as well as before, may enter a nol. pros. as to one count, without the assent of a prisoner, or as to a part of a count, as for example, in burglary, to the breaking and entering, but leaving the larceny. Com. v. Tuck, 20 Pick. 356; Rex v. Butterworth, Russ. & R. 520; U. S. v. Keen [Case No. 15,510]. A nol. pros. may be entered after or before verdict, against some of the parties. Minor v. Bank of Alexandria, 1 Pet. [26 U. S.] 74. Again, if advantage be not taken of a misjoinder of offences distinct in their character, by motion to try but one, or by demurrer, it is very doubtful if it can be objected to in arrest. Archb. Cr. Pl. 26. The twelfth rule in common law suits in this circuit, provides, that where a general verdict is rendered on several counts, the plaintiff may have leave to enter it on any one count, and strike out others. This is tantamount to what is requested here. These last views and cases appear fully sustained in rendering judgment here on the first count, after a general verdict, even if it were more doubtful than it is, as to the propriety of joining these two counts in one indictment, or if misjoined, of the propriety of taking advantage of it in arrest of judgment, rather than by motion before trial. The two offences, described in these counts, are certainly of the same family and nature, viz., revolts, and excitements to revolts. They are set out separately and distinctly. They are both defined in one statute, and both made punishable by fine or imprisonment, though there is this difference, that both of these last may be imposed in one case, and both must be in the other. The amount of both, too, may go higher in one than the other, but they do not differ in kind, except that one is "imprisonment," and the other "imprisonment to hard labor." These vary less than the punishments in assault with intent to kill, and a mere assault at common law, or burglary and larceny, which, it has been held, can be united. And "in a variety of cases, though the punishment be different, yet the counts can be joined," says Lord Ellenborough, in

3 Maule & S. 549, 559. See also, 2 Russ. Crimes, 1233, 1234. I should hesitate, however. if the punishments were so different as to be inconsistent or impracticable with each other, or if one of the counts was for a separate transaction, occurring at a different time. or belonged to a family of crimes wholly unlike, or required a trial by different kinds of evidence. or tribunals, or under different rights as to challenges. But none of those existing here, I do not feel justified in granting the motion.

Let judgment, then, be entered against the prisoners, on the verdict. upon the first count, and sentence of $50 fine against Hanson, Morgan and Bennett, and six months' confinement to hard labor; and $100 fine and one year's confinement to hard labor against Peterson.